# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

YETI Coolers, LLC,

      **Plaintiff,**

      v.

Last Brand, Inc. d/b/a Quince,

      **Defendant.**

Case No. 1:22-cv-01224

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

(1) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);
(2) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);
(3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);
(4) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;
(5) COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501;
(6) COMMON LAW TRADE DRESS INFRINGEMENT;
(7) COMMON LAW UNFAIR COMPETITION;
(8) COMMON LAW MISAPPROPRIATION; AND
(9) UNJUST ENRICHMENT.

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Last Brand, Inc. d/b/a Quince ("Quince"), alleges as follows:

### The Parties

1.       YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 7601 Southwest Parkway, Austin, TX 78735.

2.       On information and belief, Last Brand, Inc. d/b/a Quince is a Delaware corporation having a principal place of business at 735 Market Street, Bsmt., San Francisco, CA 94103.

### Jurisdiction and Venue

3.       This is an action for trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, unjust enrichment, and copyright infringement.  This complaint arises under the Texas Business & Commerce Code; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"); the Copyright Act, 17 U.S.C. § 101 *et seq.*; federal common law; and state common law, including the law of Texas.

4.       This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.       This Court has personal jurisdiction over Quince because, *inter alia*, Quince is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District.  Among other things, (i) Quince has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and/or potential customers, including in this District, at least through Quince's websites, including, for example, https://www.onequince.com/, (ii) Quince's tortious

acts giving rise to this lawsuit and harm to YETI have occurred and are occurring in the State of Texas, including in this District, (iii) Quince acted with knowledge that its unauthorized use of YETI's rights would cause harm to YETI in the State of Texas and in this District, (iv) Quince's customers and/or potential customers reside in the State of Texas, including in this District, and (v) Quince has employees in the State of Texas, including in this District.

6.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

### General Allegations – YETI's Intellectual Property

7.     For years, YETI has continuously engaged in the design, development, manufacture, promotion, and sale of its insulated drinkware products, including its 20 oz. Rambler® Tumbler.  YETI created a unique, distinctive, and non-functional design to use with YETI's 20 oz. Rambler® Tumbler.  YETI has extensively and continuously promoted and used its design for its 20 oz. Rambler® Tumbler for years in the United States and in Texas.  Through that extensive and continuous promotion and use, YETI's design has become a well-known indicator of the origin and quality of YETI's 20 oz. Rambler® Tumbler.  YETI's design also has acquired substantial secondary meaning in the marketplace and has become famous.  As discussed in more detail below, YETI owns trade dress rights relating to its 20 oz. Rambler® Tumbler.

8.     YETI has enjoyed significant sales of its 20 oz. Rambler® Tumbler throughout the United States, including sales to customers in the State of Texas.  YETI has invested significant resources in the design, development, manufacture, advertising, and marketing of its 20 oz. Rambler® Tumbler.  The design and features of YETI's 20 oz. Rambler® Tumbler have received widespread and unsolicited public attention.  For example, YETI's 20 oz. Rambler® Tumbler has been featured in numerous newspaper, magazine, and Internet articles.

9.      The design of YETI's 20 oz. Rambler® Tumbler has distinctive and non-functional features that identify to consumers that the origin of YETI's 20 oz. Rambler® Tumbler is YETI. As a result of at least YETI's continuous and exclusive use of the design of its 20 oz. Rambler® Tumbler, YETI's marketing, advertising, and sales of its 20 oz. Rambler® Tumbler, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, YETI owns trade dress rights in the design and appearance of its 20 oz. Rambler® Tumbler, which consumers have come to uniquely associate with YETI.

10.      Exemplary images of YETI 20 oz. Rambler® Tumblers are shown below:

**Illustration 1: Exemplary Images of YETI 20 oz. Rambler® Tumblers.**



11.      YETI has trade dress rights in the overall look, design, and appearance of the YETI 20 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 20 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the rim of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 20 oz. Rambler® Tumbler;

the design, appearance, and placement of the style line around the base of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 20 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 20 oz. Rambler® Tumbler and tumbler lid of the YETI 20 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

12.     As a result of YETI's exclusive, continuous, and substantial use, advertising, and sales of its 20 oz. Rambler® Tumbler products bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate YETI's trade dress as a source identifier of YETI.

13.     YETI also owns several copyrights related to its insulated drinkware products, such as Copyright Registration No. VA 2-131-637 ("the '637 Registration"), Copyright Registration No. VA 2-131-132 ("the '132 Registration"), Copyright Registration No. VA 2-099-641 ("the '641 Registration"), and Copyright Registration No. VA 2-074-727 ("the '727 Registration"). These copyrights are referred to as "YETI's Copyrights."

14.     The '637 Registration Certificate was duly and legally issued by the U.S. Copyright Office to YETI on November 13, 2018. YETI owns the entire right, title, and interest to the '637 Registration. A copy of the '637 Registration Certificate and a copy of the corresponding deposit material submitted to the Copyright Office are attached as Exhibit 1, and the copyrighted images are shown in Illustration 2 below:

**Illustration 2: YETI's '637 Registration.**



15.    The '132 Registration Certificate was duly and legally issued by the U.S. Copyright Office to YETI on November 13, 2018.  YETI owns the entire right, title, and interest to the '132 Registration.  A copy of the '132 Registration Certificate and a copy of the corresponding deposit material submitted to the Copyright Office are attached as Exhibit 2, and the copyrighted images are shown in Illustration 3 below:

**Illustration 3: YETI's '132 Registration.**



16.    The '641 Registration Certificate was duly and legally issued by the U.S. Copyright Office to YETI on December 1, 2017.  YETI owns the entire right, title, and interest to the '641 Registration.  A copy of the '641 Registration Certificate and a copy of the corresponding deposit material submitted to the Copyright Office are attached as Exhibit 3, and the copyrighted images are shown in Illustration 4 below:



17.    The '727 Registration Certificate was duly and legally issued by the U.S. Copyright Office to YETI on September 27, 2017.  YETI owns the entire right, title, and interest to the '727 Registration.  A copy of the '727 Registration Certificate and a copy of the corresponding deposit material submitted to the Copyright Office are attached as Exhibit 4, and the copyrighted images are shown in Illustration 5 below:



Illustration 5: YETI's '727 Registration.

**General Allegations – Quince's Unlawful Activities**

18.     Quince has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to purposefully advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, products that violate YETI's rights, including YETI's trade dress rights and YETI's copyrights.  Quince's infringing products are confusingly similar imitations of YETI's products.  Quince's actions have all been without the authorization of YETI.

19.     As discussed in more detail below, Quince is selling drinkware products that infringe YETI's trade dress rights and is unlawfully using YETI's Copyrights to do so.  Quince is trying to confuse consumers into thinking that its drinkware products are associated with, sponsored by, or approved by YETI, when they are not.  Quince's actions are unlawful, and they must stop.  Quince must also compensate YETI for Quince's violations of the law.

20.     Quince's infringing products include at least its 20 oz. tumblers.  Exemplary images of Quince's infringing products are shown below:

| Illustration 6: Exemplary Images of Quince's Infringing Products. |
| --- |
|  |

21.    As a result of Quince's activities related to the infringing products, there is a likelihood of confusion between Quince and its products on the one hand, and YETI and its products on the other hand.

22.    YETI used its trade dress extensively and continuously before Quince began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its infringing products.  Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Quince commenced its unlawful use of YETI's trade dress.

23.    Additionally, Quince had access to YETI's copyrighted material that YETI includes with its insulated drinkware products, and Quince copied and continues to copy material from YETI in connection with Quince's infringing 20 oz. tumblers, including material protected by YETI's Copyrights.  For example, Quince provides a booklet with its infringing 20 oz. tumbler products that shows Quince's unlawful copying, an exemplary image of which is shown below:

**Illustration 7: Exemplary Image of Quince's Infringing Product Booklet Provided with Quince's Infringing Products.**



24.     Quince also touts that its "mission was simple—create products of equal or greater quality than the leading luxury brands at a much lower price," https://www.onequince.com/about-us, and Quince compares its infringing products to YETI's products on Quince's website, for example, at https://www.onequince.com/home/vacuum-insulated-stainless-steel-tumbler?color=navy-%26-white&tracker=collection__Tumbler.

25.     In short, Quince's conduct shows that Quince was aware of YETI, of YETI's insulated drinkware products, including its 20 oz. Rambler® Tumbler, and of YETI's copyrighted material, that Quince targeted YETI and purposefully intended to harm YETI, and that Quince's unlawful activities have been intentional, willful, and malicious.

**Count I:**
**Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

26.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

27.     Quince's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing YETI's trade dress.  Quince's use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Quince with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

28.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with the infringing products.

29.     Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

30.     On information and belief, Quince's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Quince's continuing disregard for YETI's rights.

31.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Quince's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

32.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 31 as though fully set forth herein.

33.     Based on the activities described above, including, for example, Quince's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Quince is likely to dilute, has diluted, and continues to dilute YETI's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Quince's use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI and YETI's products, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

34.     YETI's trade dress is famous and is entitled to protection under the Lanham Act. YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of

YETI's trade dress in the United States. Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI and YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress became famous and acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with the infringing products.

35.     Quince's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

36.     On information and belief, Quince's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Quince's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and Quince's continuing disregard for YETI's rights.

37.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Quince's profits, YETI's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count III:**
**Unfair Competition and False Designation of Origin under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

38.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

39.    Quince's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Quince has obtained an unfair advantage as compared to YETI through Quince's use of YETI's trade dress and YETI Copyrights, and because such use is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of Quince's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.

40.    YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with the infringing products.

41.    Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

42.    On information and belief, Quince's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Quince's bad faith is evidenced at

least by the similarity of the infringing products to YETI's trade dress and by Quince's continuing

disregard for YETI's rights.

43.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least

Quince's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees

under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103**

44.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through

43 as though fully set forth herein.

45.     Based on the activities described above, including, for example, Quince's

advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or

importing the infringing products, Quince is likely to dilute, has diluted, and continues to dilute

YETI's trade dress in violation of § 16.103 of the Texas Business & Commerce Code.  Quince's

use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused,

dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of

YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to

identify and distinguish YETI's products, by associating YETI's trade dress with products of

inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

46.     YETI's trade dress is famous and is entitled to protection under Texas law.  YETI's

trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and

continuously promoted and used its trade dress in the United States and in the State of Texas.

Through that extensive and continuous use, YETI's trade dress has become a famous, well-known

indicator of the origin and quality of YETI's products in the United States and in the State of Texas

generally and in geographic areas in Texas, and YETI's trade dress is widely recognized by the

public throughout Texas and in geographic areas in Texas as a designation of the source of YETI and YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas. Moreover, YETI's trade dress became famous and acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with the infringing products.

47.     Quince's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

48.     On information and belief, Quince's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Quince's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Quince's continuing disregard for YETI's rights.

49.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Quince's profits, YETI's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count V:
### Copyright Infringement under 17 U.S.C. § 501

50.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     Based on the activities described above, including, for example, copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of YETI's Copyrights—and doing so to help advertise, promote, offer for sale, sell, and/or distribute its

16

infringing products—Quince has infringed YETI's Copyrights in violation of at least 17 U.S.C. § 501.

52.      On information and belief, Quince's acts of infringement have been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by Quince copying material from YETI, including material protected by YETI's Copyrights, to, *inter alia*, advertise, promote, offer for sale, sell, and/or distribute Quince's infringing 20 oz. tumbler products.  Quince's bad faith is further evidenced by Quince's continuing disregard for YETI's rights.

53.      Each infringement by Quince of YETI's Copyrights constitutes a separate and distinct act of infringement.

54.      Quince's infringement of YETI's Copyrights has caused irreparable injury to YETI.

55.      YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's actual damages and/or Quince's profits under 17 U.S.C. § 504(b), or in the alternative statutory damages under 17 U.S.C. § 504(c), and costs at least under 17 U.S.C. § 505.

**Count VI:**
**Common Law Trade Dress Infringement**

56.      YETI realleges and incorporates the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57.      Quince's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Quince's use of YETI's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of its infringing products, at least by creating the false and

misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.

58.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with its infringing products.

59.    Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

60.    On information and belief, Quince's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Quince's continuing disregard for YETI's rights.

61.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Quince's profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Unfair Competition**

62.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 61 as though fully set forth herein.

63.     Quince's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Quince's goods, by simulating YETI's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin, sponsorship, and/or affiliation of Quince's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.  Quince has also interfered with YETI's business.

64.     YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with its infringing products.

65.     Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the

goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

66.    On information and belief, Quince's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Quince's continuing disregard for YETI's rights.

67.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Quince's profits, punitive damages, costs, and reasonable attorney fees.

## Count VIII:
## Common Law Misappropriation

68.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69.    Quince's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law misappropriation.

70.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  Quince has wrongfully used YETI's trade dress and/or colorable imitations thereof in direct competition with YETI and gained a special advantage because Quince was not burdened with the expenses incurred by YETI.  Quince has commercially damaged YETI, at least by causing consumer confusion as to origin, sponsorship, and/or affiliation of Quince's infringing products, by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

71.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress in connection with its infringing products.

72.    Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.  Moreover, as a result of its misappropriation, Quince has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill associated with YETI's trade dress, YETI's products, and YETI.

73.    Quince's misappropriation of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Quince's continuing disregard for YETI's rights.

74.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Quince's profits, punitive damages, costs, and reasonable attorney fees.

## Count IX:
## Unjust Enrichment

75.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 74 as though fully set forth herein.

76.    Quince's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Quince has wrongfully obtained benefits at YETI's expense.  Quince has also, *inter alia*, operated with an undue advantage.

77.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money.  Quince has wrongfully used and is wrongfully using YETI's trade dress, and/or colorable imitations thereof, in direct competition with YETI, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Quince has not been burdened with the expenses incurred by YETI, yet Quince is obtaining the resulting benefits for its own business and products.

78.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes a unique, distinctive, and non-functional design.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before Quince commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with its infringing products.

79.    Quince's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI

for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Quince has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

80.     Quince's unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Quince's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Quince's continuing disregard for YETI's rights.

81.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Quince's profits.

## Demand for Jury Trial

YETI hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Quince has (i) infringed YETI's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) infringed YETI's Copyrights in violation of § 501 of Title 17 in the United States Code; (vi) violated YETI's common law rights in YETI's trade dress; (vii) engaged in common law unfair competition; (viii) engaged in common

law misappropriation; and (ix) been unjustly enriched at YETI's expense, and that all of these wrongful activities by Quince were willful;

2.      An injunction against further infringement and dilution of YETI's trade dress and further acts of unfair competition, misappropriation, and unjust enrichment by Quince, and further infringement of YETI's Copyrights by Quince, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress and/or YETI's Copyrights, pursuant to at least 15 U.S.C. § 1116, 17 U.S.C. § 502, and Tex. Bus. & Com. Code § 16.104;

3.      An Order directing Quince to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.      An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress or that infringe YETI's Copyrights in Quince's possession or control, (iii) all plates, molds, and other means of making the infringing products in Quince's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Quince's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing Quince to publish a public notice providing proper attribution of YETI's trade dress and YETI's Copyrights to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.     An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.     An award of Quince's profits, YETI's actual damages, enhanced damages, punitive damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8.     An award of YETI's actual damages and/or Quince's profits, or in the alternative statutory damages under, and costs pursuant to 17 U.S.C. § 504(b, c) and § 505; and

9.     Such other and further relief as this Court deems just and proper.


Dated:  November 18, 2022                    Respectfully submitted,


By: /s/ Joseph J. Berghammer
Joseph J. Berghammer (admitted in the Western District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Michael L. Krashin (admitted in the Western District of Texas)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Anthony J. Denis (admitted in the Western District of Texas)
Illinois Bar No. 6329599
adenis@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive
Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**